## Hamburg Bank et al., Appts., *v.* Mahlon Seidel et al.

An assignment of a mortgage with verbal directions to the assignee to collect the debt and pay the proceeds to the assignor, if living, or to the brothers and sisters of the assignee, if the assignor is dead, constitutes a special trust.

After the death of the assignor the orphans' court has not jurisdiction of the trust, and will not compel the assignee, who is also the assignor's administrator, to account for the proceeds.

(Decided October 4, 1886.)

Appeal from a decree of the Orphans' Court of Berks County, sustaining exceptions to the report of an auditor. Affirmed.

Nathan Trexler died September 26, 1881. On October 20, 1881, letters of administration were issued to his son, Benjamin B. Trexler, who died April 10, 1883. Benjamin filed an account December 2, 1882, to which exceptions were filed by the Hamburg Bank and other creditors of Nathan Trexler, February 15, 1883, and by Oliver Trexler, a son and heir of Nathan Trexler on November 15, 1883.

By the account filed the estate appeared to be insolvent.

The exceptions complained *inter alia* that Benjamin had failed to charge himself with the proceeds of two mortgages: one for $3,780 and the other for $709.50, given by Jacob and Caroline Leibensperger to Nathan Trexler, and assigned without consideration on the 12th of April, 1881, by Nathan Trexler, the decedent, to Benjamin Trexler, for the purpose, as the exceptions alleged, of collection.

The court referred the exceptions to William M. Goodman, Esq., as auditor, to pass upon the exceptions, audit, restate, and make distribution. The testimony taken by the auditor, in so far as it related to the assignment of the mortgages, is stated in the opinion.

The auditor sustained the exceptions of the creditors and Oliver Trexler, to the account, and surcharged the accountant with the proceeds of the mortgages. The orphans' court reversed this action of the auditor, and struck out the surcharge: From this decree this appeal was taken by the Hamburg Bank, by other creditors and by the administrator *d. b. n.*

*W. D. Horning* and *H. Willis Bland,* for appellants.—The mother and sister of the accountant were not parties, and they had no direct interest in the result of the litigation. The distribution could not have been made to them if they had not assigned, but must have been made to the administrator *d. b. n.* of the decedent. Montgomery's Estate, 7 Phila. 504; Lewis v. Ewing, 18 Pa. 315; Carter v. Trueman, 7 Pa. 321; Com. v. Strohecker, 9 Watts, 480; Little v. Walton, 23 Pa. 166; Bowman's Appeal, 62 Pa. 170.

Persons merely collaterally interested may transfer and release such interest, and become thereby competent witnesses. Forrester v. Torrence, 64 Pa. 31; Carter v. Trueman, 7 Pa. 315; Steininger v. Hoch, 42 Pa. 432.

The rule in the case of Post v. Avery, 5 Watts & S. 509, and

kindred cases, was not intended to render persons incompetent as witnesses who were competent at common law. Evans v. Dela, 35 Pa. 457.

It applies only to persons who have assigned a chose in action in which the recovery would have been for their own use, if no assignment had been made. The assignor in an action in which the claim assigned comes directly in controversy cannot be a witness. Hartman v. Keystone Ins. Co. 21 Pa. 476.

Nor assignors of a chose in action, called to assist in its recovery with their oaths. Kirkpatrick v. Muirhead, 16 Pa. 127.

The evidence shows a substantially contemporaneous agreement between Nathan and Benjamin, that the latter should hold the mortgages for collection only. Evidence of an express agreement is not essential. Rhines v. Baird, 41 Pa. 263; Plumer v. Guthrie, 76 Pa. 455, 456; Nicolls v. McDonald, 101 Pa. 519; Kunkle v. Wolfersberger, 6 Watts, 130.

It is not on this day an open question that a conveyance absolute on its face may be shown to be a security for money loaned, and that this may be made to appear by oral testimony. Sweetzer's Appeal, 71 Pa. 273; Kunkle v. Wolfersberger, 6 Watts, 126; Hiester v. Maderia, 3 Watts & S. 384; Houser v. Lamont, 55 Pa. 311, 93 Am. Dec. 755; Harper's Appeal, 64 Pa. 315.

Parol evidence is admissible to explain a latent ambiguity. Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Coleman v. Eberly, 76 Pa. 197.

Parol evidence is admissible, in cases of fraud, or of plain mistake in drawing a writing. Christ v. Diffenbach, 1 Serg. & R. 464, 7 Am. Dec. 624; Caulk v. Everly, 6 Whart. 303; Morrison v. Morrison, 6 Watts & S. 516; Bollinger v. Eckert, 16 Serg. & R. 422; Gower v. Sterner, 2 Whart. 75; Chew v. Gillespie, 56 Pa. 309.

Or in case of an attempt to make a fraudulent use of it subsequently. Oliver v. Oliver, 4 Rawle, 141, 26 Am. Dec. 123; Renshaw v. Gans, 7 Pa. 117.

Conversations and negotiations leading to a written contract are admissible to prove a fraud or trust; but there should be clear evidence that the arrangement continued up to the time of executing the writing. McGinity v. McGinity, 63 Pa. 38.

Parol evidence may be received to explain and define the

subject-matter of a written agreement (Barnhart v. Riddle, 29 Pa. 92; Aldridge v. Eshleman, 46 Pa. 420; Gould v. Lee, 55 Pa. 993; to prove a consideration not mentioned in a deed, provided it be not inconsistent with the consideration expressed in it (Lewis v. Brewster, 57 Pa. 410); to establish a trust (Cozens v. Stevenson, 5 Serg. & R. 421); to rebut a presumption or equity (Bank v. Fordyce, 9 Pa. 275, 49 Am. Dec. 561; Musselman v. Stoner, 31 Pa. 265); to alter the legal operation of an instrument where it contradicts nothing expressed in the writing (Chalfant v. Williams, 35 Pa. 212); to explain a latent ambiguity (McDermott v. United States Ins. Co. 3 Serg. & R. 604; Iddings v. Iddings, 7 Serg. & R. 111, 10 Am. Dec. 450); and to supply deficiencies in the written agreement (Miller v. Fichthorn, 31 Pa. 252); but, as a general rule, it is inadmissible to contradict or vary the terms of a written instrument (Hain v. Kalbach, 14 Serg. & R. 159, 16 Am. Dec. 484; Barnhart v. Riddle, 29 Pa. 92; Miller v. Fichthorn, 31 Pa. 252; Harbold v. Kuster, 44 Pa. 392; Lloyd v. Farrell, 48 Pa. 73, 86 Am. Dec. 563; Anspach v. Best, 52 Pa. 356).

In cases of fraud, accident, or mistake, the rule is different. Where equity would set aside or reform the instrument on either of these grounds, parol evidence is admissible to contradict or vary the terms of the agreement as written. Christ v. Diffenbach, 1 Serg. & R. 464, 7 Am. Dec. 624; Iddings v. Iddings, 7 Serg. & R. 111, 10 Am. Dec. 450; Miller v. Henderson, 10 Serg. & R. 290; Parke v. Chadwick, 8 Watts & S. 96; Clark v. Partridge, 2 Pa. St. 13; Renshaw v. Gans, 7 Pa. 117; Rearich v. Swinehart, 11 Pa. 233, 51 Am. Dec. 540; Lippincott v. Whitman, 83 Pa. 246.

The direction to pay to Nathan's children in case of his death was a testamentary act, and Benjamin's authority was revoked by Nathan's death. Frederick's Appeal, 52 Pa. 338, 91 Am. Dec. 159. Note to Ellison v. Ellison, 1 White & T. Lead. Cas. in Eq. ed. 1876, p. 446.

The transfer of the mortgages was a legal fraud upon the creditors of Nathan Trexler. Fowler's Appeal, 87 Pa. 454.

The orphans' court is a court of equity. Kittera's Appeal, 17 Pa. 423; Dundas's Appeal, 73 Pa. 479, 480.

*F. R. Schell* and *R. E. Wright & Sons,* for appellees.—The right to the fund in controversy depended upon transactions had

with Benjamin B. Trexler.　He was deceased.　His legal representatives were the "assignors of the thing or contract in action," and thus the act of 1869 removing the disqualification of interest does not apply.　The case is covered by the proviso to the act.　A witness is incompetent if the effect of his testimony may be to preserve a fund for the payment of a debt due to himself.　Paull v. Mackey, 3 Watts, 110; Mishler v. Merkle, 10 Pa. 509; Sharp v. Long, 28 Pa. 433; Hill v. Hill, 32 Pa. 511.

Where one party of the "thing" in action is dead, and his rights have passed to another, the act of 1869 has no application. Karns v. Tanner, 66 Pa. 297; Hess v. Gourley, 89 Pa. 195; Ewing v. Ewing, 96 Pa. 381; Hanna v. Wray, 77 Pa. 27; Gardner v. McLallen, 79 Pa. 398; Stanbridge v. Catanach, 4 W. N. C. 176; Hunt's Appeal, 100 Pa. 590.

The releases given to the administrator d. b. n. of Nathan Trexler, and the assignment of their shares to him individually, did not make the accountant's mother and sister competent witnesses.　The doctrine of Post v. Avery, 5 Watts & S. 509, is still law.

An assignment of a cause of action which is merely colorable shall not devest the title of the plaintiff so as to make him a competent witness, whatever its legal effect between the parties may be, and every assignment is to be deemed colorable when no other motive for it can be made to appear.　Post v. Avery, 5 Watts & S. 509; Leiper v. Peirce, 6 Watts & S. 555; Patterson v. Reed, 7 Watts & S. 146; McClelland v. Mahon, 1 Pa. St. 364; Clover v. Painter, 2 Pa. St. 46; Asay v. Hoover, 5 Pa. 21, 45 Am. Dec. 713; Montgomery v. Grant, 57 Pa. 243; Grayson's Appeal, 5 Pa. 395; Graves v. Griffin, 19 Pa. 176; Bailey v. Knapp, 19 Pa. 192; Lindsley v. Malone, 23 Pa. 24; and Hatz v. Snyder, 26 Pa. 511.

An assignor through whose assignment the plaintiff claims is not a competent witness, when executors, administrators, or guardians are either plaintiffs or defendants.　Tintsman v. Crowshore, 15 W. N. C. 202.

If there was anything for the heirs, the distribution under the act of 1834 should properly have been to the administrator d. b. n.　Purdon's Digest, pp. 94, 95, 99, 100, 425; Scott, Intestates, p. 518; 1 Rhone, Orphans' Court Pr. p. 285; Com. v. Strohecker, 9 Watts, 481; Carter v. Trueman, 7 Pa. 319; Lewis

v. Ewing, 18 Pa. 315; Montgomery's Estate, 7 Phila. 504; Little v. Walton, 23 Pa. 166; Bowman's Appeal, 62 Pa. 170; Crossel v. Black, 4 Pittsb. 327.

But before the act of 1834 this was not so. The distinction (when an administrator died) between such assets of the decedent as were administered and such as were not was clear and distinct. Such as were not administered and still existed in specie or uncollected as the decedent had left them, passed to the administrator *d. b. n.*, and in these it might be said that the interest of the heirs was merely collateral. But such as had been administered and were in the hands of the administrator ready for distribution passed to the heirs, legatees, and creditors in the proportions to which they were entitled, and the proceedings to recover them were by the heirs directly. See Drenkle v. Sharman, 9 Watts, 489; Potts v. Smith, 3 Rawle, 361–370, 24 Am. Dec. 359; Scott, Intestates, p. 518–521; Slaymaker v. Farmers' Nat. Bank, 14 W. N. C. 349.

It is true the act of 1834 changed all this, and provided that the administrator *d. b. n.* should be entitled to take in his hands all undivided assets, whether administered or not. But he took them for the use of the heirs, legatees, and creditors. Drenkle v. Sharman, 9 Watts, 485.

In order to convert a deed absolute upon its face into a mortgage by parol evidence, such evidence must be clear, explicit and unequivocal. Subsequent admissions and declarations of the alleged mortgagee only are not sufficient. An agreement must be proved which is substantially contemporaneous with the execution and delivery of the deed. Nicolls v. McDonald, 101 Pa. 514.

To show by parol that a deed absolute upon its face is a mortgage the proof must be clear, explicit, and unequivocal. The proof must establish an agreement substantially contemporaneous with the execution and delivery of the deed, and rely not on subsequent admissions and declarations of the mortgagee only. Plumer v. Guthrie, 76 Pa. 441; Kutz's Appeal, 100 Pa. 75; Phillips v. Meiley, 15 W. N. C. 225.

The evidence proper to be submitted to a jury for the purpose of revoking a written agreement or altering its terms is only such as would justify a chancellor in reforming the writing, on the ground of fraud, accident, or mistake, and must be clear,

precise and indubitable.    Murray v. New York, L. & W. R.
Co. 13 W. N. C. 213.

Evidence must be of what occurred at the execution of the
paper.    Martin v. Berens, 67 Pa. 459.

If there was a trust created by the transfer of those mortgages,
it cannot be enforced in this proceeding.

The only evidence of the nature of the trust upon which it is
alleged that Benjamin was to hold the mortgages was this:

If Benjamin collected the money in Nathan's lifetime, he was
to pay it to him.    If he collected it after Nathan's death, he was
to pay it to the brothers and sisters in equal shares.

That the brothers and sisters have ample remedy to enforce
their equity under such a trust, if there be one, is clear upon au-
thority.    23 Am. L. Reg. N. S. 1, where Pennsylvania cases are
collected; Justice v. Tallman, 86 Pa. 147; Dock v. Boyd, 93 Pa.
92; Seventh Nat. Bank v. Cook, 73 Pa. 483, 13 Am. Rep. 751;
First Nat. Bank v. McMichael, 106 Pa. 460, 51 Am. Rep. 529.

Appellants contend that the assignment of the mortgages, as
modified by the alleged parol trust, was testamentary in char-
acter, because not take effect until Nathan's death and hence
revocable.    Even if this were so, it never has been revoked,
and hence would become operative.    Turner v. Scott, 51 Pa.
127; Scott v. Scott, 70 Pa. 246; Ritter's Appeal, 59 Pa. 9;
Book v. Book, 15 W. N. C. 150; Frederick's Appeal, 52 Pa.
339, 91 Am. Dec. 159.

There are no parties properly in court against whom the de-
cree asked for by the appellants could be made.    The ad-
ministrator *de bonis non* might have sued to recover the assets
in the hands of the decedent.    Act of February 24, 1884, § 31
(Purdon's Digest, 99); Scott, Intestates, p. 518; 1 Rhone,
Orphans' Court Pr. p. 285, § 143; Com. v. Strohecker, 9 Watts,
481; Carter v. Trueman, 7 Pa. 319; Lewis v. Ewing, 18 Pa.
315; Montgomery's Estate, 7 Phila. 504.

If the proceeding on the account already filed, and before an
auditor, was to be followed out in lieu of a new proceeding by
the administrator *de bonis non,* it should have been under the
same act.    A scire facias should have been issued against the
executors or administrators of B. B. Trexler, deceased.
Purdon's Digest, p. 425, pl. 100; Id. p. 124, pl. 94, 95.

If the creditors had any standing, and insolvency at the time
of transfer were proven, it would not avoid the transfer so as

to inure to the benefit of heirs. "None but those intended to be postponed or defrauded are within the protection of the statute of Elizabeth." Phipps v. Boyd, 54 Pa. 342; Re Bradway, 1 Ashm. (Pa.) 212.

The representatives of a donor who has made a voluntary conveyance in fraud of creditors can only set it aside to the extent that may be required to pay such creditors. Pringle v. Pringle, 59 Pa. 286.

OPINION BY MR. JUSTICE STERRETT:

Exceptions having been filed by creditors and others to the account of Benjamin B. Trexler, administrator of the estate of Nathan Trexler, deceased, an auditor was appointed by the orphans' court to pass upon the same, restate the account, if necessary, and distribute the balance. The duty of the auditor under this appointment was twofold: (1) To ascertain the correct balance due by accountant; and (2) to distribute the same among the parties entitled thereto. It is only as to the former branch of his duty that any question arises on this appeal. As to the parties who are entitled to participate in the distribution of the balance that may be found due by the accountant, there appears to be no controversy.

One of the exceptions, and the only one involved in this contention, was that accountant should be charged with the proceeds of the Leibensperger mortgages, one for $3,780 and the other for $709.50, both of which were assigned by the intestate to his son, the accountant, and collected by him.

It was alleged by exceptants that the mortgages were assigned solely for the purpose of collection, with the distinct understanding that if accountant succeeded in collecting them in his father's lifetime, the proceeds should be paid to him; if not, they should be accounted for as assets of his estate. It is conceded that accountant collected the debts secured by the mortgages, and has since died without having accounted for the proceeds. The burden, of course, was on the exceptants to show that the assignment was not intended to invest accountant with the absolute ownership, or title to the mortgages in his own right, but only in trust for the purpose stated.

Accountant's mother and sister, having first assigned their respective interests in the estate and executed releases to the administrator *de bonis non,* were called by exceptants and testified

in relation to the assignment of the mortgages and the purpose for which it was made.    On their testimony in connection with that of other witnesses, the learned auditor found in favor of exceptants, and accordingly surcharged accountant with the proceeds of the mortgages and interest, amounting in all to $5,-347.35, ascertained the balance due by him, and distributed the same.    The orphans' court, however, held that accountant being dead at the time of hearing before the auditor, his mother and sister were incompetent to testify that the assignment was executed merely for the purpose of facilitating the collection of the mortgages, and not with the view of transferring title absolutely to accountant.

We are not prepared to say there was any error in this; but, assuming for the sake of argument that the witnesses in question were competent, their testimony establishes a special trust that is not cognizable in the orphans' court; and for that reason, if no other, there was no error in sustaining the exceptions to the auditor's report.

As to the disposition accountant agreed to make of the mortgage money when collected, the substance of their testimony is that if Benjamin, the accountant, collected the money in his father's lifetime, he was to pay it to him.    If he collected it after his father's death, he was to pay it to his brothers and sisters in equal shares.    The exact language of Mary Trexler, as we find it on the record, is:  "My father said to him, Benjamin, that if he collected the mortgages in his lifetime he would have to pay the money over to him, my father; and if he, my father, didn't live, he would have to pay it out to his brothers and sisters.    This was at the time the assignments were made; that is, my father said this in the morning, when the assignments were made in the evening of the same day.    Benjamin said he would pay it over."

The widow, Mrs. Lydia Trexler, testified as follows:   "I was present when my husband assigned the mortgages to Benjamin. After the mortgages were assigned, he, Benjamin, said to me the mortgages were assigned to him for collection.    He said that he, Benjamin, was to pay the money back to his brothers and sisters, and if he would collect it in his father's lifetime, he would have to pay it to him."    The learned auditor also found as a fact that the assignor of the mortgages intended to create a trust for the benefit of his children in case the money was not collected in his lifetime.

It is conceded the assignor of the mortgages died before they were collected. If an alternative trust, such as was testified to by the witnesses and found by the auditor, was created, it necessarily follows that accountant held the proceeds of the mortgages, not in trust for his father's estate nor for his father's creditors, but in trust for his brothers and sisters. If the assignment was made for the purpose of hindering, delaying, or defrauding his creditors, they are the only parties who can assail it. His widow and heirs cannot question its validity; nor can the trustee be compelled to account in the orphans' court until the trust is first stricken down, at the instance of the assignor's creditors, as a fraud upon them to the extent of their respective claims. This has not been done; and we think there was no error in holding that the court had no jurisdiction of a trust created by accountant's intestate in favor of his children.

Decree affirmed and appeal dismissed, at the costs of appellants.